IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In the Matter of: AMERICANSTONE DIAMOND OF ALABAMA, INC., Debtors

| | |
|---|---|
| DIALUCK CORPORATION;<br>ANTRIX DIAMOND & EXPORTS, LTD.;<br>J. C. DIAMONDS INC.; DINIAL DIAM,<br>INC.; TRI STAR CONTRACTING;<br>MAYAN ART, INC., | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 01-G-1063-S |
| Appellants, | )<br>) Bankruptcy No. 00-01058-TOM-7 |
| v. | )<br>) |
| AMERICANSTONE DIAMOND OF<br>ALABAMA, INC., | )<br>)<br>) |
| Debtor/Appellee. | ) |

ENTERED
DEC 1 2 2001

In the Matter of: AMERICANSTONE DIAMOND, INC.., Debtors

| | |
|---|---|
| DIALUCK CORPORATION;<br>J. C. DIAMONDS, INC.; RICHARD ARON<br>& ASSOCIATES; DINIAL[1] DIAM, INC., | )<br>)<br>) |
| Appellants, | ) CIVIL ACTION NO. 01-G-1064-S |
| v. | )<br>) Bankruptcy No. 00-03742-TOM-7 |
| AMERICANSTONE DIAMOND, INC., | )<br>) |
| Debtor/Appellee. | ) |

---

[1] At different places in the record Dinial is spelled in the following ways: Dinyal; Diniyal; and Dinyial.

MEMORANDUM OPINION

The above-styled cases are before the court on appeal from the ruling of the bankruptcy judge. By order of May 23, 2001, the cases were consolidated for purposes of the appeal, but remained separate cases. On February 18, 2000, petitioners Antrix Diamond & Exports, Ltd; Dialuck Corp.; Diniyal Diamonds, Inc.; J. C. Diamonds; Mayan Art, Inc.; and Tri-Star Contracting [hereinafter ADA Petitioning Creditors[2] or ADA Appellants] filed an involuntary petition[3] for relief under Chapter 7 of the Bankruptcy Code against Americanstone Diamond of Alabama, Inc. [hereinafter ADA], Bankruptcy No. 00-0158-TOM-7, Civil Action No. 01-G-1063-S. On June 29, 2000, Petitioning Creditors Dialuck Corp.; Diniyal Diamond, Inc.; J.C. Diamonds; and Richard Aron & Associates [hereinafter ADI Petitioning Creditors or ADI Appellants] filed a Chapter 7 action

---

[2] "The term 'petitioning creditors' can be used to refer to entities that are commencing the case, whether or not they are statutorily authorized to do so. ..." 2 *Collier on Bankruptcy* ¶ 303.03 [1] (15th ed. rev. 2001).

[3] The "only entities that can commence an involuntary case are those holding claims .. that (a) are not contingent as to liability and (b) are not subject to bona fide dispute. There is no specific term within the Code defining such entities, and they are not statutorily referred to in section 303(b) as creditors." 2 *Collier on Bankruptcy* ¶ 303.03 [1] (15th ed. rev. 2001).

against Americanstone Diamond, Inc. [hereinafter ADI], Bankruptcy No. 00-03742-TOM-7, Civil Action No. 01-G-1064-S.

History of the cases shows that on September 7, 2000, the cases were consolidated in the bankruptcy court. A bench trial was held December 13-14, 2000, and January 9, 2001. At the conclusion of the "petitioning creditors"[4] case oral motions of alleged debtors ADA and ADI were made for judgment as a matter of law pursuant to Bankruptcy Rule 7052 and Rule 52(c) of the Federal Rules of Civil Procedure. Said motions of debtors were based on arguments that there were insufficient valid petitioning creditors and that both ADA and ADI were generally paying their debts as they came due. The court made the following findings of fact:

> A.   On February 18, 2000, Antrix Diamond Exports, Ltd., Dialuck Corporation, Dinial Diamond, Inc., J.C. Diamonds, Mayan Art, LLC and Tri-Star Contracting filed an involuntary Chapter 7 petition against ADA. On March 7, 2000, ADA filed an answer denying the allegations of the petitioning creditors and filed a counterclaim for damages, costs, and attorneys' fees against the petitioning creditors.
>
> B.   On June 29, 2000, Dialuck Corporation, Dinial Diamond, Inc., J.C. Diamonds and Richard Aaron & Associates

---

[4] The term "petitioning creditors," unless otherwise specified, refers to both "Petitioning Creditors" and "ADI Petitioning Creditors."

        filed an involuntary Chapter 7 petition against ADI. ADI thereafter filed an answer denying the allegations of the petitioning creditors. Upon petitioning creditors' motion and with the consent of ADA and ADI, the involuntary petitions against ADA and ADI were consolidated for joint administration on September 7, 2000.

C.      In viewing the evidence in the light most favorable to petitioning creditors, the Court finds petitioning creditors have established a prima facie case that there are at least twelve (12) creditors of each entity and that there are three petitioning creditors as to each entity as required by 11 U.S.C. § 303(b). Accordingly, that ground of the alleged debtors' motion related to the sufficiency of the number of valid petitioning creditors is not well taken.

D.      Under 11 U.S.C. 303(h), the Court may order the relief requested by the petitioning creditors only if the petitioning creditors prove that the alleged debtor is not generally paying its debts as they become due or if there has been a custodian appointed or authorized to take possession of the debtors' property within 120 days of the filing of the petition.

E.      There is no evidence to indicate that a custodian had been appointed or authorized to take possession of any of the property of either ADI or ADA within 120 days before the date of the filing of either petition. Accordingly, the Court must then determine if petitioning creditors met their burden of proof that the alleged debtors are not generally paying their debts as they become due under 11 U.S.C. 303(h)(1).

F.      ADI's financial records indicate that the debts of ADI were generally current as of December 31, 1997. As of December 31, 1998, the number of creditors of ADI decreased by approximately one-half, with greater than fifty percent

(50%) of its accounts payable still current. Of those debts that remained unpaid over ninety (90) days, ADI's two largest debts were owed to Dialuck Corporation and Indian Diamond. As of May 3, 2000, all of ADI's obligations are shown on its aged accounts payable records as being unpaid over ninety (90) days.

G. However, the evidence further shows that during that period, ADA from time to time paid various expenses of ADI on behalf of ADI, and such payments were tracked and recorded on the books and records of one or both entities as amounts due and owing from ADI to ADA. Additionally, ADI from time to time repaid ADA by payment of various expenses on behalf of ADA or otherwise, and such payments were also tracked and recorded on the books and records of both entities as amounts owing from ADA to ADI. Additionally, there was no evidence that ADI had taken steps to liquidate, wind up its business, or was conducting its business other than in the ordinary and regular course.

H. With respect to ADA, the financial records of ADA presented in evidence by petitioning creditors related to time periods after the filing of the involuntary petition. However, there appears to be no dispute for purposes hereof that such financial records are representative of the financial dealings of ADA at the time of filing of the petition.

I. The financial records of ADA show that as of March 21, 2000, ADA had approximately $150,000.00 in current debt and approximately $602,000.00 in debt unpaid over sixty (60) days. However, almost all of the debt unpaid over sixty (60) days constituted obligations to only two creditors, Dialuck Corporation ($440,000.00) and CD Imports ($160,000.00). As of May 3, 2000, ADA's current accounts payables were reduced from approximately $150,000.00 to approximately

     $75,000.00. The accounts payable over sixty (60) days were also reduced from approximately $602,000.00 to approximately $588,000.00, with the two largest obligations still being those owed to Dialuck Corporation and CD Imports.

J.  ADA's financial statements further show that ADA's cash flows fluctuate from month to month, with some months having a positive cash flow and other months having a negative cash flow.

K.  Finally, ADA's financial statements show ongoing, monthly obligations of ADA including salary, rent, taxes, advertising, travel and other such expenses ordinarily related to an ongoing business. Petitioning creditors presented no evidence that these expenses were not being paid, or that any of ADA's checks had been dishonored.

  Based on the above findings of fact, using the *In re Reed*, 11 B.R. 755, 759-60 (S.D.W.Va. 1981) four factor test[5] the court found that petitioning creditors had not met their burden of proving that ADA and ADI were not generally paying debts as they came due as required under 11 U.S.C. § 303(h)(1). Involuntary Chapter 7 petitions against both ADI and ADA were dismissed. A motion to reconsider was filed by "petitioning creditors" in both cases February 26, 2001. Said motions were denied March 14, 2001, without a

---

  [5] Elements of the four factor test follow: 1) the number of debts; 2) the amount of the delinquency; 3) the materiality of nonpayment; and 4) the nature of the debtor's conduct of his financial affairs.

hearing. A notice of appeal of the orders of February 16, 2001, and March 14, 2001, was filed March 23, 2001. Appeals were consolidated May 23, 2001.

Petitioning creditors have argued that the Bankruptcy Court committed reversible error in three ways: 1) the Bankruptcy Court erred when it considered payments made by ADA as a separate entity on behalf of ADI in holding that ADI was generally paying its debts as such debts became due; 2) the Bankruptcy Court erred when it concluded that since ADA was paying ADI's debts ("from time to time"), ADI was generally paying its debts as such debts became due; and 3) the Bankruptcy Court erred when it held that ADA was paying its debts as such debts became due. *See* 11 U.S.C. § 303 (h)(1).[6]

For interpretation of the above-referenced statute see the following:

1) *In re H.I.J.R. Properties Denver*, 115 B.R. 275, 278 (Bankr. D.Colo. 1990) (Because "Section 303 (h) focuses on debtor's ability to pay debts as they come due" the court disagreed with *debtor's* contention that payment of a debtor's obligations by a third party was equivalent to payments by the debtor himself."). It is error for the court to consider payment by one company or corporation of another's debts payment by the debtor.

---

[6] "[A]fter trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if-
(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute."

7

  2) *In re Knoth*, 168 B.R. 311, 317-318 (Bankr. S.D.S.C. 1994) ("Payments of a debtor's obligations by a third party are not treated as payments by the debtor himself." (referring to *H.I.J.R. Properties Denver*));[7]

  3) *In re Food Gallery at Valleybrook*, 222 B.R. 480, 488 (Bankr. W.D. Pa. 1998) ("Payments of a debtor's obligations by a third party are not treated as payment by the debtor himself." (*Knoth*)).[8]

In determining whether ADA was paying its debts as they came due the Bankruptcy Court considered that a large majority of the debt over 60 days past due was owed to two creditors, only one of which was a petitioning creditor. Substantial case authority exists for the prohibition against involuntary petitions where only a single unpaid creditor exists. *In re Food Gallery*, 222 B.R. at 487. Exceptions to the rule, however, do exist. *Id.*, at 487-88. In a scenario in which a debtor is paying the smaller periodic payments on one of two debts as they

---

[7] The debtor's creditors were paid by third parties, not the debtor, in *In re Knoth*, 168 B.R. 311 (Bankr. S.D.S.C. 1994). The Bankruptcy Court held that such payments by third parties were not payments by the debtor himself.

[8] In *In re Food Gallery at Valleybrook*, 222 B.R. 480 (Bankr. W.D. Pa. 1998), as in the case at bar, a large portion (approximately $800,000.00) of the debtor's debts were satisfied by funds loaned to the debtor either directly or indirectly (general partner of a limited partnership injected cash into the limited partnership to help pay its debts.). The court concluded that the debtor had not been paying its debts as they became due. A third party cannot pay the debt.

become due, but is unable to make payments on the larger debt that represents a substantial percentage of its overall obligations, the facts support a finding that the debtor is failing to pay its debts as they become due for purposes of § 303(h)(1). *In re Food Gallery*, 222 B.R. at 487-88 (referring to *In re Fisher*, 202 B.R. 341, 350-51(E.D.N.Y. 1996); *In re Garland Coal & Mining Co.*, 67 B.R. 514, 521-22 (Bankr. W.D.Ark. 1986) (Court considered ratio of unpaid to accruing debts more revealing than a simple count of unsatisfied debts in deciding that nonpayment of over more than fifty percent of the outstanding liabilities sufficient to warrant an order of relief.); *Matter of International Teldata Corp.*, 12 B.R. 879, 882-83 (Bankr. D.Nev. 1981) (Court believed that "generally not paying debts includes regularly missing a significant number of payments which are significant in amount in relation to the size of the debtor's operation.") (quoting *In re All Media Properties, Inc.*, 5 B.R. 126, 142-43 (S.D. Tex. 1980)); *In re Midwest Processing*, 41 B.R. 90, 100 (Bankr. D.N.D. 1984) (Courts "excuse non-payment of claims which are a matter of significant dispute," being sensitive to the "unique circumstances involved in each involuntary proceeding."). In being sensitive to the unique circumstances in the instant case relief must be

granted: Approximately 60% of ADA's total debt is owing to the Petitioning Creditors who are not being repaid on the debt.

It was improper for the Bankruptcy Court to consider payments made by ADA on behalf of ADI amounted to payments by ADI as they became due. As previously discussed, payments must be made by the debtor, not by a third party. Too, the debts at issue must be the subject of a "bona fide dispute"[9] to the entire claim excluded from analysis under § 303(h)(1). *See, 2 Collier on Bankruptcy* ¶ 303.03[2][b] (15th ed. rev. 2001).

In *In re H.I.J.R. Properties Denver*, 115 B.R. 275, 278 n.3 (D. Colo. 1990) (referred to in *Knoth*) the court held the following:

> [The debtor] contends that, in considering whether a debtor is generally paying its debts, payments of a debtor's obligations by a third party should be treated as payments by the debtor itself. I disagree. Section 303(h) focuses on the *debtor's* ability to pay debts as they come due. The fact that third party or an insider has stepped in to cover payments for the debtor or has voluntarily waived repayment of a debt owed to it is a relevant factor in assessing the debtor's payment history under § 303(h). *See, e.g., In re Midway Processing Co.*, 41 B.R. at 101; *In re B.D. Int'l Discount Corp.*, 15 B.R. 755, 760 (Bankr. S.D.N.Y. 1981), *aff'd*, 24 B.R. 876 (S.D.N.Y.

---

[9] The *Garland* court adopted the definition of "bona fide dispute" found in *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986): "[T]he proper definition of bona fide dispute is 'whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal.'"

1982), *aff'd*, 701 F.2d 1071 (2d Cir. 1983). Moreover, such third party payments may later result in claims against the debtor for these amounts. *In re Midwest Processing Co.*, 41B.R. at 101. A debtor's ability to pay debts must be considered in light of the "totality of the circumstances," including those relating to third-party payments.

The situations in the instant cases are no different from the situations in cases cited herein in which courts have held that payments by third parties are not payments by the debtor himself. Contrary to case law the Bankruptcy Court denied the involuntary petitions for bankruptcy by the petitioning creditors because payment was being made on debts by third parties. It is irrelevant that ADA and ADI paid the debts of one another and tracked the payments on the books and records of each company.[10] The obligations still exist. Tracking only proves which third-party made the payment and the amount still due and owing to that third-party. Each debtor is responsible for meeting its own obligations as they become due.

---

[10] Appellees presented no evidence that either ADA or ADI had an obligation to pay the debts of the other company. Appellees introduced no evidence at trial (no evidence of promissory notes or resolutions passed by the Board of Directors authorizing debt repayment) showing that ADA actually repaid advances made to it by ADA. Absent such evidence, if ADA and ADI are separate companies, repayment could be fraudulent transfers.

The Bankruptcy Court erred in considering ADA's payment of ADI's debts. It erred in its application of the four factor *Reed* test. The court did not consider other evidence before it. Evidence before the court indicates ADI and ADA are separate and distinct corporations, a position both corporations have vigorously taken.

Examination of the accounts payable of ADI shows that although it has no **current** debts, it has substantial **past due** debts. The December 31, 1997, aged payables report of ADI (Exhibit C-61) shows that ADI had "current debts" totaling $1,658,595.04. The December 31, 1998, aged payables report of ADI (Exhibit C-60) shows that ADI had debts totaling $1,605,445.28 ($955,998.28 in "current debts," and $649,4477 in "over 90 days past due debts."). The May 3, 2000, aged payable report of ADI (Exhibit C-56) shows that ADI had debts representing "90 days past due debts" totaling $1,539,385.20. Thus, the records of ADI show that it was current on its payables at the end of 1977, quit paying them in 1998, and was severely past due on their payment by May 3, 2000.

Trial evidence additionally showed that ADI had $417,000.00 in known debts[11] not reflected in its books and records: $27,867.20 owed to J.C. Diamonds; $141,103.97 owed to Dinial Diam; $96,536.41 to Richard Aron & Associates (Involuntary Petition, ADA Docket no. 1); and, $151,434.94 to ABN AMRO Bank (Notice of Joinder in Involuntary Petition, ADI Docket no. 26). Furthermore, in its responses to requests for admissions[12] ADI admitted it is not current with all its creditors.

ADI is currently paying nothing on any of its approximately $1,956,000.00 debts as they come due. It is past due in its payments to at least 15 known creditors.[13] The nonpayment of these debts is material because they are its ***only debts***. No payment has been made for a considerable length of time. At trial ADI proved by a collection of balance sheets and income statements for year-end 1997 through May 2000 (Exhibit C-33) that it stopped conducting business long ago.

---

[11] These debts were admitted to by its president as obligations still due and owing which were not reflected on its own financial statements.

[12] Response to Request No. 10, ADA Docket no 24.

[13] The list of creditors includes those listed on ADI's accounts payable report and debts due and owing to the "Petitioning Creditors."

In the Findings of Fact, made a part of the Bankruptcy Court order of March 21, 2000, the Bankruptcy Court correctly found that ADA had approximately $150,000.00 of "current debt" listed on its aged payables report and approximately $602,000.00 of debt that was "over 60 days past due," and therefore not current. As of that date the "current debt" listed of ADA on its aged payables report was approximately $75,000.00, and its debt that was "over 60 days past due" was approximately $588,000.00. Of the amount "over 60 days past due" a large majority was owed to two creditors: Dialuck Corporation and CD Exports. Since ADA presented no evidence to the Bankruptcy Court that it did not owe the debt the Bankruptcy Court held, that pursuant to the *Reed* factors ADA was generally paying its debts as they became due. The court denied the petition for involuntary bankruptcy against ADA. This ruling is error. Pursuant to *Garland* a substantial percentage of the debt obligation was not being paid. Hence, for purposes of Section 303(h)(1) ADA was not paying its debts as they became due. *See also In re J.B. Lovell Corp.*, 80 B.R. 254, 255 (Bankr. N.D. Ga. 1987) (Court granted an involuntary petition of bankruptcy to a sole creditor because the amount owed it constituted a significant percent of the debtor's total outstanding liabilities (80%).); *In re B.D. Int'l Discount Corp.*, 15 B.R. 755, 763 (Bankr.

S.D.N.Y. 1981), *aff'd*, 24 B.R. 876 (S.D.N.Y. 1982), *aff'd*, 701 F.2D 1071 (2nd Cir. 1983), *cert. denied*, 464 U.S. 830, 104 S. Ct. 108. 78 L.Ed. 2d 110 (1983) (Court held that where a debtor failed to make payments on a debt which constituted 98 percent of its total debt, debtor failed to pay his debts as they came due in spite of payment of number of smaller debts.); *In re Fischer*, 202 B.R. 341, 350-51 (E.D.N.Y. 1996) ("There is substantial authority for the proposition that even though an alleged debtor may owe only one debt, or very few debts, an order for relief may be granted where such debt or debts are sufficiently substantial to establish the generality of the alleged debtor's default.")[14]; *Teldata,*, 12 B.R. at 882-83 *Midwest Processing*, 41 B.R. at 100; *In re 7H Land & Cattle Co.*, 8 B.R. 22 (Bankr. Nev. 1980) ("[A] single creditor may, under 11 U.S.C. 303(h)(1) petition and establish involuntary bankruptcy where there are special circumstances."); *In re Archer*, 6 B.R. 632, 635 (Bankr. E.D.N.Y. 1980) (Court found that state court judgment in favor of the sole creditor was equivalent to a "claim" meeting the criteria for commencement of involuntary petition.).

---

[14] Although there were only two outstanding debts asserted in the involuntary petition, Fischer was in default on each of them. The combined two debts exceeded $2.1 million.

The above-cited cases are applicable to the involuntary petition filed by Petitioning Creditors against ADA. Of the 55 ADA reported debts shown on Exhibit C-36 almost 86% were "over 60 days past due" as of May 3, 2000. Of the 47 reported creditors shown on Exhibit C-39, over 79% of the debt owed them is "over 60 days past due." Of the "past due debt" $451,923.27 is owed to Dialuck Corporation.[15] This Dialuck debt represents approximately 60% of the total debt owed to ADA's creditors, none of which has been repaid by ADA.

On the basis of all of the above the court REVERSES the Bankruptcy Court and REMANDS the causes with instructions for the Bankruptcy Court to enter the petitions for involuntary bankruptcy. The court further holds the Bankruptcy Court committed reversible error in three ways:

1) the Bankruptcy Court erred when it considered payments made by ADA as a separate entity on behalf of ADI in holding that ADI was generally paying its debts as such debts became due;

2) The Bankruptcy Court erred when it concluded that since ADA was paying ADI's debts ("from time to time"), ADI was generally paying its debts as such debts became due; and

3) The Bankruptcy Court erred when it held that ADA was paying its debts as such debts became due.

---

[15] ADA accounts payable records.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this 12TH day of December 2001.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.